UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CHARLES TODD BISHOP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3-12-165 |
| | § | |
| CHET MORRISON CONTRACTORS, | § | |
| L.L.C., *et al*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

In March 2012, Plaintiff Charles Todd Bishop allegedly suffered severe injuries when a large piece of metal grating was dropped on his head while he was working offshore in Defendants' employ. Bishop filed a Jones Act suit in state court, and Defendants removed to this Court. Bishop now moves to remand the case to County Court at Law Number 2 of Galveston County. He relies on the federal statute disallowing removal of Jones Act claims.

Defendants argue in opposition that removal was proper on the ground that Bishop's Jones Act claim was fraudulently pleaded because Bishop was not a Jones Act seaman. If they can avoid the Jones Act's bar on removal, Defendants contend that federal jurisdiction otherwise exists on both diversity and federal question grounds (the latter pursuant to the Outer Continental Shelf Lands Act). The Court has considered the facts of the

1

case, the arguments of counsel, and the appropriate authorities, and now determines that Plaintiff's Motion to Remand (Docket Entry No. 5) should be **GRANTED**. Defendants have not carried their burden to show that Bishop could not have been a Jones Act seaman, and thus this suit must proceed in Bishop's chosen state-court forum.

I.   BACKGROUND

Bishop was employed by Defendant Chet Morrison Contractors, L.L.C. ("Chet Morrison") from April 2011 until March 2012, when he was allegedly injured while working a well abandonment job in the East Cameron 129 block, part of the Outer Continental Shelf off the coast of Louisiana. He alleges that a coworker accidentally dropped a 100 pound piece of metal grating onto his head from a height of thirty feet, causing extensive injuries and requiring him to spend eight days in the hospital. Although the accident apparently occurred on a fixed platform, Bishop claims that he was assigned to the L/B JONI, a liftboat owned by Offshore Liftboats, L.L.C., a nonparty.[1]

In his job at Chet Morrison, Bishop worked offshore providing support for various well plugging and abandonment jobs that Chet Morrison

---

[1] Though Bishop has not yet brought suit against Offshore Liftboats, he may intend to do so at some point, given that he included the company's name in the case heading on his motion to remand. *See* Pl.'s Mot. to Remand 1, Docket Entry No. 5.

2

was engaged in and, in addition, spent a significant amount of time working on land at Chet Morrison's onshore facilities. Bishop appears to have had the title of Plugging and Abandonment Assistant, but his exact duties are not clear from the record. The parties agree that, in total, Bishop conducted 63.32% of his work with Chet Morrison offshore and the remaining 36.68% onshore. However, they strongly disagree about whether Bishop worked on fixed platforms or on jack-up vessels. Bishop alleges that he would be assigned to a specific jack-up liftboat while working offshore and that his duties included working with the liftboat's equipment while it was in transit, assisting the liftboat's crane operator while it was jacked up on location next to a fixed platform, and running pumps and hoses from the liftboat to fixed platforms. According to Bishop, most of his offshore work—approximately ten hours of each twelve-hour shift—was performed on the liftboats, with the remainder on fixed platforms. In contrast, Chet Morrison claims that Bishop only roomed and boarded on the liftboats, and that he conducted all of his offshore work on fixed platforms.

Bishop filed an action in state court alleging negligence under the Jones Act, unseaworthiness, and violations of the obligation of maintenance and cure. He now moves to remand. Defendants argue that removal was proper because Bishop was not a seaman under the Jones Act. The issue

before the Court is whether Defendants have satisfied their heavy burden to prove that a normally nonremovable Jones Act case was properly removed.

## II.   STANDARD

Suits properly brought in state court under the Jones Act may not be removed.[2]  *See* 46 U.S.C. § 30104 (incorporating by reference the Federal Employers Liability Act's bar on removal, 28 U.S.C. § 1445(a)).  Removal is nonetheless proper if a defendant can show that the plaintiff's Jones Act claim was fraudulently pleaded to prevent removal.  *See Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999) (citations and quotation marks omitted); *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993).  That said, the "burden of persuasion on a removing party in such a case . . . is a heavy one." *Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir. 1995).  The district court may examine the claim in a "summary judgment-like procedure" but may deny remand "only where, resolving all disputed facts and ambiguities in current substantive law in [the] plaintiff's favor, the court determines that the plaintiff has no possibility of establishing a Jones

---

[2] Defendants cite the "savings to suitors" clause in arguing that such cases may still be removed if an independent basis for federal jurisdiction exists. *See* Opp. to Mot. to Remand 2, Docket No. 8 (citing *Morris v. T E Marine Corp.*, 344 F.3d 439, 444 (5th Cir. 2003)).  However, the relevant provision in this case is the Jones Act's incorporation of FELA's statutory bar on removal. *Cf. Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 348 (5th Cir. 1999)  (examining whether an independent basis for removal jurisdiction existed only after concluding that the Jones Act could not possibly bar removal).

4

Act claim on the merits." *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006) (citation and quotation marks omitted).

### III.  DISCUSSION

The foundational question in any Jones Act case is whether the plaintiff qualifies as a Jones Act seaman.  Under *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), an individual will count as a seaman for purposes of the Jones Act when he has an "employment-related connection to a vessel in navigation."  *Id.* at 368 (citation and quotation marks omitted).  This connection will be found where the "employee's duties . . . contribute to the function of the vessel or to the accomplishment of its mission" and "the connection to the vessel in navigation [is] substantial in terms of both its duration and its nature."  *Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 347 (5th Cir. 1998) (citing *Chandris*, 515 U.S. at 368–69).

Before applying *Chandris*'s two prongs, however, the more "fundamental prerequisite" that must be addressed is whether or not any of the structures or vehicles worked on by the plaintiff count as "vessels" for purposes of determining seaman status under the Jones Act.  *Id.* (citing *Burchett*, 48 F.3d at 176).  The test for what counts as a vessel is a liberal one; as the Fifth Circuit has stated, "[t]he exotic watercraft that have been deemed vessels and the heavy inquiry that surrounds each analysis of an

unconventional craft's status has led even this court to recognize that the 'three men in a tub would fit within our definition of a Jones Act seaman, and one probably could make a convincing case for Jonah inside the whale.'" *Holmes*, 437 F.3d at 446 (quoting *Burks v. Am. River Transp. Co.*, 679 F.2d 69, 75 (5th Cir. 1982)) (brackets and ellipses omitted).  The Biblical whale aside, Fifth Circuit precedent makes clear that permanently fixed drilling platforms are not Jones Act vessels, but that jack-up rigs and liftboats are vessels even when temporarily attached to the ocean floor.  *Compare Hufnagel*, 182 F.3d at 346 n.1 (noting that "[i]t is clear" that fixed platforms are not vessels), *with Hous. Oil & Minerals Corp. v. Am. Int'l Tool Co.*, 827 F.2d 1049, 1052–53 (5th Cir. 1987) (collecting cases stating that jack-up rigs and other detachable barges are vessels).  Thus, the L/B JONI and any other liftboats that Bishop may have worked on qualify as Jones Act vessels.

Applying *Chandris*, that Chet Morrison and the other Defendants do not meet their burden to prove that Bishop could not have been a Jones Act seaman.  To make their case, they largely rely on the affidavit of Devann Frazier, Chet Morrison's "Risk Management coordinator," who states that Bishop was never assigned to work on a vessel or a vessel's work crew, never performed any work on a vessel, and only performed work on fixed

6

platforms or on land.  Aff. of Devann Frazier ¶¶ 23–26, Docket Entry No. 8-1.  Defendants also provide the affidavit of Craig Pierce, the "Health, Safety, and Environmental Manager" of nonparty Offshore Liftboats, L.L.C., the owner of the L/B JONI.  Pierce's affidavit states that Bishop was never a member of the JONI's crew and never contributed to its mission.  Aff. of Craig M. Pierce ¶¶ 5–6, Docket Entry No. 8-7.  Finally, Defendants supplement the two affidavits with Bishop's timesheets, which show Bishop's assignments and the dates and hours that he worked.  *See* Chet Morrison Contractors DFR Labor Report 1–21, Docket Entry No. 8-1 Ex. A.  Defendants contend that these materials conclusively show that Bishop only worked on fixed platforms and was not assigned to any vessel.

However, as Bishop points out, while the timesheets show that he spent approximately 63% of his work time offshore—a fact that he does not contest—they are silent regarding the duties he performed offshore and whether his work time was spent on fixed platforms or on liftboats.  Thus, the relevant evidence comes down to Bishop's word that he performed most of his work on the JONI and other liftboats against Frazier and Pierce's word that he did not.  Resolving all disputed facts in favor of Bishop, as this Court must do when evaluating Defendants' claim of fraudulent pleading,

7

Defendants have not met their burden to prove that Bishop cannot possibly be a Jones Act seaman.

The first *Chandris* prong requires Bishop's duties to "contribute to the function of the vessel or to the accomplishment of its mission." *Chandris*, 515 U.S. at 368 (citation, quotation marks, and brackets omitted). While it is only satisfied for "maritime employees who do the ship's work . . . this threshold requirement is very broad." *Id.* Bishop claims that he spent much of his time working about the JONI and other liftboats, time he allegedly used to maintain liftboat equipment, run hoses from the liftboats to fixed platforms, and assist the liftboat crane operators. Unlike the plaintiff in *Hufnagel*, who only roomed and boarded on the vessel in that case and at most performed incidental duties upon it, Bishop has alleged that he was "doing the ship's work." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991). Because the Frazier and Pierce affidavits merely dispute Bishop's allegations and cannot disprove them, Bishop may yet fulfill the first *Chandris* prong.

Likewise, Bishop can still show that he has a connection to a vessel or a fleet of vessels that is substantial in both duration and nature, as he must ultimately do to fulfill the second *Chandris* prong. The duties he alleges he consistently performed offshore, if proven true, clearly fulfill the

8

requirement that his connection be substantial in nature, as they would tend to show that he was "a member of the vessel's crew" and not "simply a land-based employee who happen[ed] to be working on the vessel." *Chandris*, 515 U.S. at 371. In addition, his affidavit shows that he could exceed *Chandris*'s 30% benchmark for showing a connection of substantial duration. *See id.* at 370 ("A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."). In his affidavit, Bishop claims that, for the over 63% of his work that took place offshore, an average of ten hours of each twelve-hour shift was spent working on the liftboats. That figure, if true, would correlate to almost 53% of his total work time, easily passing *Chandris*'s 30% mark.

Defendants are correct that Bishop has not produced evidence proving he spent at least 30% of his work time on any one vessel or fleet of vessels under common control, and that he has not even identified any of the vessels he worked on other than the JONI. However, Bishop need not make such showings at this stage. In trying to show that Bishop's Jones Act claim was fraudulently pleaded, the burden is on Defendants to show that Bishop has "no possibility of establishing a Jones Act claim on the merits." *Holmes*, 437 F.3d at 445 (citation and quotation marks omitted). Because Defendants

9

have failed to prove that Bishop will be unable to identify a substantial connection to a particular vessel or fleet of vessels, Bishop may still satisfy the second *Chandris* prong.

Defendants have not met their burden to show that Bishop's Jones Act claim was fraudulently pleaded. Remand is appropriate.

### IV.   ORDER

For the foregoing reasons, **IT IS ORDERED**:

Plaintiff's Motion to Remand (Docket Entry No. 5) is **GRANTED**. This suit is **REMANDED** to the County Court at Law Number 2 of Galveston County, Texas.

**IT IS SO ORDERED**.

**SIGNED** this 23rd day of August, 2012.

_____
Gregg Costa
United States District Judge